Donna CARINI and Dominic Carini,
Plaintiffs-Respondents, †

AURORA HEALTH CARE, INC., Wisconsin Physicians
Service Ins. Corp., Involuntary-Plaintiffs,

v.

PROHEALTH CARE, INC. and
The Medical Protective Company,
Defendants-Appellants.

Court of Appeals

*No. 2014AP1131. Submitted on briefs April 14, 2015.
—Decided July 28, 2015.*

2015 WI App 61

(Also reported in 869 N.W.2d 515.)

† Petition for Review Filed.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Lori Gendelman* and *Jason J. Franckowiak* of *Otjen, Gendelman, Zitzer, Johnson & Weir, S.C.*, of Waukesha.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Kevin R. Martin* and *Drew J. DeVinney* of *Martin Law Office, S.C.*, of Oak Creek.

Before Curley, P.J., Kessler, J., and Thomas Cane, Reserve Judge.

¶ 1. CURLEY, P.J. This case involves the recreational immunity statute, WIS. STAT. § 895.52 (2007–08).[1] Donna Carini, an employee of ProHealth Care, Inc., and her husband, Dominic Carini, sued ProHealth Care for injuries Donna sustained at her employer's company picnic, which was hosted at the

[1] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

Milwaukee County Zoo parking lot.[2] Carini was in the parking lot and walking to the food tent when she tripped over a power cord and fractured her shoulder. ProHealth Care moved for summary judgment and later for dismissal or judgment notwithstanding the verdict on Carini's subsequent negligence claim on the basis of recreational immunity, but the trial court denied the motions.

¶ 2. The issues before us on appeal are: (1) whether Carini was engaged in a "recreational activity" when she injured her shoulder; and (2) whether the alleged negligence was related to a condition or maintenance of the land on which Carini fell. For the reasons that follow, we conclude that because Carini was engaged in a recreational activity and because the alleged negligence was related to the parking lot's condition, the trial court erred in denying ProHealth Care's motions. Moreover, because we conclude that the recreational immunity statute bars Carini's negligence claim, we need not address the parties' arguments regarding whether the trial court erroneously exercised its discretion by excluding certain medical testimony about Carini's injuries. *See Raasch v. City of Milwaukee*, 2008 WI App 54, ¶ 2, 310 Wis. 2d 230, 750 N.W.2d 492. Therefore, we reverse the trial court's denial of ProHealth Care's motions and remand with directions to dismiss Carini's negligence claim against ProHealth Care.

## BACKGROUND

¶ 3. On September 21, 2008, ProHealth Care hosted a picnic for its employees in the Lion parking lot

---

[2] Hereafter we refer to Donna and to the Plaintiffs generally as "Carini."

of the Milwaukee County Zoo.[3] In the center of the picnic area was a large, rectangular 80' x 150' tent with seating for 1200 people. Located near one side of the large tent was a smaller tent with four tables and some portable toilets. Located near another side of the large tent were a buffet tent and a food preparation tent. Located near yet another side of the large tent were a beverage tent and a stage for the band that ProHealth Care had hired.

¶ 4. While near the band and en route to the picnic's food tent, Carini tripped and fell over a power cord extending from the stage, fracturing her shoulder. The cord ran from the stage to a small building adjacent to the parking lot and was supposed to be covered, but it was not.

¶ 5. Carini subsequently sued ProHealth Care for negligence. The second amended complaint alleged that ProHealth Care "failed to properly secure the subject cord to the sidewalk . . . so as to prevent the risk of injury or harm to users of the sidewalk, failed to provide warnings that the subject unsecured cord was placed across the sidewalk, and was otherwise negligent."

¶ 6. ProHealth Care moved for summary judgment based on recreational immunity, but the trial court denied the motion. A jury trial took place, and the jury found ProHealth Care negligent. Following trial, ProHealth Care renewed its arguments on recreational immunity, requesting dismissal or judgment notwithstanding the verdict pursuant to Wis. Stat. § 805.14(5). The trial court denied the motion, and ProHealth Care now appeals.

---

[3] ProHealth Care contracted with the Zoo to hold the picnic in the Zoo's parking lot and to grant the picnic's attendees access to the Zoo's grounds during the picnic.

¶ 7. ProHealth Care challenges the denial of its motion for summary judgment and its motion for dismissal or judgment notwithstanding the verdict pursuant to WIS. STAT. § 805.14(5). We review *de novo* the denial of ProHealth Care's motions, employing the same methodology as the trial court. *See Smaxwell v. Bayard*, 2004 WI 101, ¶ 12, 274 Wis. 2d 278, 682 N.W.2d 923 (summary judgment); *Dakter v. Cavallino*, 2014 WI App 112, ¶ 17, 358 Wis. 2d 434, 856 N.W.2d 523 (motions under WIS. STAT. § 805.14). "We need not repeat [the summary judgment] methodology here, except to note that summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *See Beerbohm v. State Farm Mut. Auto. Ins. Co.*, 2000 WI App 105, ¶ 6, 235 Wis. 2d 182, 612 N.W.2d 338; WIS. STAT. § 802.08(2). In the case before us, where no disputed issues of material fact exist, " 'we need only determine whether the moving party is entitled to judgment as a matter of law.' " *See Beerbohm*, 235 Wis. 2d 182, ¶ 6. (citation omitted). "Additionally, we note that whether an entity is immune from liability under the recreational immunity statute involves the application of a statute to undisputed facts and thus is a question of law we review *de novo*." *See Kautz v. Ozaukee Cnty. Agric. Soc.*, 2004 WI App 203, ¶ 8, 276 Wis. 2d 833, 688 N.W.2d 771 (italics added).

¶ 8. Specifically, ProHealth Care renews its argument that Carini's case must be dismissed because ProHealth Care is shielded from liability by the recreational immunity statute. The recreational immunity

statute, WIS. STAT. § 895.52, provides that, barring exceptions not relevant here, no property owner is liable for any injury suffered by a person allowed to engage in a recreational activity on the owner's property. *See* § 895.52(2). The statute was created "to encourage property owners to open their lands for recreational activities by removing a property user's potential cause of action against a property owner's alleged negligence." *See Kautz*, 276 Wis. 2d 833, ¶ 9. To further that goal we must liberally construe the statute in favor of property owners. *See id.*

¶ 9. WISCONSIN STAT. § 895.52(2) provides:

No DUTY; IMMUNITY FROM LIABILITY. (a) Except as provided in subs. (3) to (6), no owner and no officer, employee or agent of an owner owes to any person who enters the owner's property to engage in a recreational activity:

1. A duty to keep the property safe for recreational activities.

2. A duty to inspect the property, except as provided under s. 23.115(2).

3. A duty to give warning of an unsafe condition, use or activity on the property.

(b) Except as provided in subs. (3) to (6), no owner and no officer, employee or agent of an owner is liable for the death of, any injury to, or any death or injury caused by, a person engaging in a recreational activity on the owner's property or for any death or injury resulting from an attack by a wild animal.

¶ 10. In this case, the questions the parties pose are whether: (1) Carini was engaged in a "recreational activity," *see* WIS. STAT. § 895.52(1)(g); and (2) whether ProHealth Care's negligence was related to

665

the condition or maintenance of the land, *see Held v. Ackerville Snowmobile Club, Inc.*, 2007 WI App 43, ¶ 9, 300 Wis. 2d 498, 730 N.W.2d 428 ("One circumstance that may affect immunity is whether a property owner's allegedly negligent act is related to the condition or maintenance of the land."). The parties agree that ProHealth Care was an "owner" under the statute. *See* § 895.52(1)(d) (defining "owner" as a "person, including a . . . nonprofit organization, that owns, leases or occupies property"). Moreover, they do not argue that any of the situations in subsections (3) to (6) apply to exclude immunity. *See* § 895.52(3)-(6).

*(1) Carini was engaged in a "recreational activity" when she tripped and fell in the picnic area.*

¶ 11. We turn first to the question of whether Carini was engaged in a "recreational activity." *See* Wis. Stat. § 895.52(1)(g). Carini does not argue that the act of participating in the picnic was not "recreational."[4] Indeed, "picnicking" is a recreational activity under the statute. *See id.* Rather, Carini claims that she was not engaged in a recreational activity because she was merely walking from her car to the picnic and had not yet started to participate in the picnic when she fell. She claims that she "was not walking for

---

[4] "Section 895.52(1)(g) consists of three parts: (1) a broad definition stating that a recreational activity is 'any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure,' (2) a list of 28 specific activities denominated as recreational, and (3) a second broad definition, directing that a recreational activity can be 'any other outdoor sport, game or educational activity.' " *Sievert v. Am erican Family Mut. Ins. Co.*, 190 Wis. 2d 623, 629, 528 N.W.2d 413 (1995) (citing Wis. Stat. § 895.52(1)(g)).

exercise, pleasure or to enjoy the scenery," but for the "purely utilitarian" purpose of getting from her car to the picnic. She further argues that to "rule otherwise would . . . provide boundless immunity during the injured party's . . . traveling." We disagree.

¶ 12. Our case law makes clear that the act of walking to or from an immune activity constitutes recreational activity. *See Sauer v. Reliance Ins. Co.*, 152 Wis. 2d 234, 239–40, 448 N.W.2d 256 (Ct. App. 1989) (" 'walking down the river to go fishing' " even when injured party "was not actually fishing at the time of the accident" constituted " 'recreational activity' within the meaning of the statute"); *Linville v. City of Janesville*, 184 Wis. 2d 705, 717, 516 N.W.2d 427 (1994) (person who drowned in municipal pond was engaged in a "recreational activity" while at the pond to scope out a fishing spot for the next day); *see also Hupf v. City of Appleton*, 165 Wis. 2d 215, 221–22, 477 N.W.2d 69 (Ct. App. 1991) ("walking to or from an immune activity does not alter the landowner's status"). Therefore, while Carini may not have started eating or socializing when she fell, because she was walking in the picnic area on her way to partake in the festivities, she was engaged in a recreational activity. Moreover, Carini's fear that our ruling will provide "boundless immunity" during an injured party's traveling is unfounded considering the facts of this case. As noted, Carini fell when she was on the picnic's premises. She was, by her own testimony, near the band, and, as shown by the exhibits cited in her brief, within the area of the parking lot designated for the picnic. In other words, she was not merely in transit; she was in the midst of the action.

¶ 13. Furthermore, the primary cases on which Carini relies to support her argument—*Meyer v. School District of Colby*, 226 Wis. 2d 704, 595 N.W.2d 339 (1999), and *Sievert v. American Family Mutual Ins. Co.*, 190 Wis. 2d 623, 528 N.W.2d 413 (1995)—are inapposite. In *Meyer*, the Supreme Court did not, as Carini argues, "rule[] that coming to or from a recreational activity . . . is not synonymous with being engaged in a recreational activity." Rather, *Meyer* held that a woman injured on the bleachers during a high school football game was not engaged in a "recreational activity" because the activity in which she was partaking—watching her son's football game—fell under the organized team sport activity exception of WIS. STAT. § 895.52(1)(g). *See Meyer*, 226 Wis. 2d at 706–07. Likewise, *Sievert* did not involve a situation in which the injured party was on his way to partake in a recreational activity; rather, the plaintiff had merely walked onto his neighbor's dock to say a simple hello. *See id.*, 190 Wis. 2d at 629, 632–33 (explaining that "walking to greet a neighbor is not one of the 28 activities listed in sec. 895.52(1)(g)," does not "fall within the broad definition of a recreational activity as 'any other outdoor sport, game or educational activity,'" and does not generally fall into the realm of what the statute contemplated as "recreational activity") (citation omitted).

¶ 14. Therefore, because Carini was walking in the designated picnic area on her way to partake in the picnic festivities when she fell, we conclude she was engaged in a "recreational activity."

*(2) ProHealth Care's negligence was related to the condition of the picnic area.*

¶ 15. We next consider whether ProHealth Care's negligence was related to a condition or main-

668

tenance of the land, *i.e.,* the picnic area. Carini discusses four cases—*Kosky v. International Association of Lions Clubs,* 210 Wis. 2d 463, 565 N.W.2d 260 (Ct. App. 1997), *Linville, Held,* and *Sauer*—to argue that ProHealth Care's negligence was not related to the maintenance or condition of the land. Our review of these cases, however, yields the opposite conclusion.

¶ 16. In *Kosky,* the plaintiff's injury, which occurred while he was detonating fireworks at a Fourth of July celebration, was found not to have resulted from negligence relating to the condition or maintenance of the land. *See id.,* 210 Wis. 2d at 468. While Kosky was not paid to detonate the fireworks, *id.* at 469, his "subjective intent" in assisting his local Lions Club in doing so "was to work," *id.* at 474. The Court of Appeals held that the alleged negligence was not related to the condition or maintenance of the land:

> Here, the activities of the Lions Club ... were related to setting of temporary firing tubes for explosive fireworks and the establishment of a process relating to the loading and cleaning of said tubes, and to supervise and train workers such as Kosky regarding a dangerous process of loading and cleaning explosive devices. These allegedly negligent activities are neither connected directly to the land nor related to the condition or maintenance of the land. Instead, these activities related exclusively to the detonation of the fireworks.

*Id.* at 476–77.

¶ 17. *Kosky* does not mirror the circumstances before us because the alleged negligence related to training and supervision, not the maintenance or condition of the land. In Carini's case, by contrast, the second amended complaint alleges that ProHealth Care "failed to properly secure the subject cord to the

sidewalk ... so as to prevent the risk of injury or harm to users of the sidewalk, failed to provide warnings that the subject unsecured cord was placed across the sidewalk, and was otherwise negligent." In other words, the complaint alleges that ProHealth Care created an unsafe condition upon the premises where recreational activity was taking place.

¶ 18. As for *Linville*, *Held*, and *Sauer*, which all held that the alleged negligence *was* related to maintenance or a condition of the land—*see Linville*, 184 Wis. 2d at 720–21; *Held*, 300 Wis. 2d 498, ¶ 13; and *Sauer*, 152 Wis. 2d at 241—Carini attempts to distinguish them by arguing that they differ as to the amount of time that the negligent maintenance or unsafe condition existed. She argues, "[a] power cord brought onto the land for a four[-]hour musical performance ... lacks any time-based degree that would presumably make it an actual condition of the land itself."

¶ 19. But Carini points to no law from those cases—or in any case, for that matter—that requires us to assess whether an unsafe condition is permanent or temporary. Indeed, a close read of *Held* and *Sauer* shows the opposite: that the length of time the allegedly negligent unsafe condition was present does not matter. In *Held*, the plaintiffs collided with a broken-down trail-grooming vehicle that had been abandoned on the premises less than a week earlier. *See id.*, 300 Wis. 2d 498, ¶¶ 2–3. In *Sauer*, the hole in the riverbed in which the plaintiff fell was a temporary condition created as part of an ongoing bridge-replacement project. *See id.*, 152 Wis. 2d at 236–37.

¶ 20. Moreover, *Kautz*, a case Carini fails to discuss, also establishes that recreational immunity

applies when a temporary condition is placed upon the land. In *Kautz*, the plaintiff contracted E. coli after coming into contact with animal waste at the county fair. *Id.*, 276 Wis. 2d 833, ¶ 6. As ProHealth Care points out, the waste that sickened the plaintiff was neither permanent nor a naturally-occurring feature of the fair grounds. It was present only because the fair exhibitors had brought the animals onto the grounds, and still the defendants' alleged failure to properly handle the waste was determined to constitute negligent maintenance of the fairgrounds. *See id.*, ¶ 12.

¶ 21. As noted, Carini alleged that, by failing to properly secure the power cord that tripped her and/or by failing to warn picnickers about the cord, ProHealth Care created an unsafe condition upon the premises. Considering the relevant cases, which make clear that a temporary, artificial condition still may constitute a "condition" of the land, we are satisfied that ProHealth Care's alleged negligence did in fact stem from a condition of the picnic area.

¶ 22. In sum, because Carini was engaged in a "recreational activity" when she injured her shoulder and because ProHealth Care's negligence was related to the condition of the picnic area, the recreational immunity statute, Wis. Stat. § 895.52, bars liability. The negligence claim against ProHealth Care must therefore be dismissed.

*By the Court.*—Orders reversed and cause remanded with directions.